317 So.2d 657 (1975)
Anthony REINERS, Plaintiff-Appellant,
v.
STRAN-STEEL CORPORATION et al., Defendants-Appellees.
No. 5068.
Court of Appeal of Louisiana, Third Circuit.
July 30, 1975.
Rehearing Denied August 28, 1975.
Writ Refused October 24, 1975.
*658 Pugh, Buatt, Landry & Pugh by Kenneth O. Privat, Crowley, for plaintiff-appellant.
Voorhies & Labbe by Patrick A. Juneau, Jr., Lafayette, Clanton & Johnson, John W. Johnson, Eunice, for defendants-appellees.
Before FRUGE, MILLER and DOMENGEAUX, JJ.
DOMENGEAUX, Judge.
This is an action in redhibition by the plaintiff seeking damages and attorney's fees from the manufacturer (Stran-Steel Corp.) and retailer (E. B. Feucht & Son; E. B. Feucht; and Darryl Feucht) of a large steel "Quonset Hut" which he purchased some time in the latter part of 1972. From a judgment in favor of the plaintiff in the sum of $450.00, solely against the manufacturer, the plaintiff has appealed. Defendants neither appealed nor answered the appeal.
The plaintiff, Anthony Reiners, a St. Landry Parish, Louisiana, rice and soybean farmer, contacted Darryl Feucht in 1972 seeking to purchase a farm storage building and shop. E. B. Feucht & Son, of which Darryl Feucht was a partner, was the franchise outlet in the Eunice, Louisiana, area for products of Stran-Steel Corp., a manufacturer of steel buildings. Reiners subsequently purchased, for the sum of $3,966.00, a 40 × 48 foot prefabricated steel building which was ordered *659 from the defendant-manufacturer on January 5, 1973. In addition, the plaintiff contracted with the defendant-retailer to build a concrete "chain-wall" foundation for the steel building, which was completed on January 22, 1973. The defendant-retailer also was in the business of erecting the steel buildings which it sold. Reiners, however, chose to erect the building himself in order to save money. The building materials were delivered to plaintiff's property in crates and bundles on February 6, 1973, the same being stored near the construction site covered with visquene. Plaintiff began construction the following week and was in the process of erecting the structural steel when it was discovered that the manufacturer had mistakenly shipped two "right-hand" instead of "left-hand" rafters. This necessitated stoppage of the construction and plaintiff contacted Darryl Feucht who in turn ordered two replacement rafters from the manufacturer. The materials arrived on March 12th, but upon examination, the plaintiff found these rafters to also be "right-handed". On this occasion E. B. Feucht offered to "field modify" the rafters so they could be used, or suggested that plaintiff could do so and charge the amount back to the retailer. During this same period plaintiff apparently also had some trouble with the original erection drawings furnished with the building materials and the defendant-retailer supplied the plaintiff with a supplementary or additional set of plans. Plaintiff subsequently modified the rafters himself and did not thereafter contact the defendant-retailer until shortly before this suit was filed. The building structure or frame was completed on or about March 15th, but at that time plaintiff stopped further construction allegedly because he had to start planting his crops. In August, 1973, the plaintiff examined the remaining building materials (construction iron and galvanized roof sheeting), and discovered rust was present thereon.
Defendants were subsequently contacted by plaintiff's attorney and informed of the "defects" in the building materials. Stran-Steel sent a representative to examine the materials and thereafter replied, contending no defects were present in the initial shipping (with the exception of the incorrect rafters for which the company was willing to reimburse the cost of correcting) and that the rust deterioration was caused by improper and inadequate handling and protection during prolonged storage. The defendant retailer answered by letter essentially the same as the manufacturer. Plaintiff subsequently demanded a complete new building and upon refusal by Stran-Steel, and no answer from the defendant-retailer, this suit was filed. Plaintiff sought damages which included the purchase price of the building, the cost of the foundation[1], and attorney's fees.
Following a trial on the merits the district judge concluded the defendant-manufacturer was responsible for the improper delivery of materials, and delay caused to the plaintiff. He further found, however, that the plaintiff also had responsibilities, once he chose to erect the building himself, which he did not fulfill. Accordingly, $450.00 was awarded the plaintiff, to be paid by the defendant-manufacturer. The action against the defendant retailer was dismissed.
Two issues are presented on this appeal. (1) Did plaintiff sustain his burden of proof in an action for redhibition against the defendant-manufacturer and/or retailer? (2) Were the damages awarded by the trial judge sufficient?
Redhibition is the avoidance of sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice. LSAC.C. Art. 2520.
*660 To maintain an action of redhibition, the plaintiff must prove that the vendor sold the thing to him; that the thing contained a hidden vice, not apparent from ordinary inspection, which subsequently rendered the thing unfit for use; that the vice existed at the time of the sale; and that the vendor did not advise him of it. Peters v. Pattison Pontiac Company, 259 So.2d 99 (La.App. 4th Cir. 1972); L.S.A.C.C. Art. 2520 et seq.
Herein the plaintiff complains essentially of three defects: (a) the incorrect rafters, (b) the construction plans, and (c) the rusted galvanized sheeting and construction steel.
There is no question but that incorrect rafters were supplied to the plaintiff on two occasions, necessitating both the re-ordering of same and, finally, field fabrication to correct the deficiencies. These defects were, however, corrected by the plaintiff prior to this suit for redhibition and cannot therefore be grounds for such an action, the appropriate relief being a reduction in the purchase price or action in quanti minoris. LaFleur v. Boyce Machinery Corp., 294 So.2d 498 (La.1974); Johnson v. H. W. Parson Motors, Inc., 231 So. 2d 73 (La.App. 1st Cir. 1970). In addition we note that both the defendant retailer and manufacturer requested that a bill be submitted to them for the costs incurred, assuring that such would be paid. This of course was never done.
Insofar as the construction plans are concerned, the record indicates that the original plans delivered to the plaintiff were deficient in part, needing certain minor revisions. A second set of plans was sent by the manufacturer to the plaintiff on March 1, 1973, which contained the revisions, sufficient to enable him to construct all parts of the building. This socalled defect, however, under the particular facts of this case, is not one which in our opinion would support redhibition because it neither rendered the construction absolutely useless nor rendered its use so inconvenient and imperfect that it must be supposed the plaintiff would not have purchased it had he known of the plans needing revision.
This leads us to the question of the rusted materials. The evidence, however, reflects that the materials were not rusted on delivery and that such a condition resulted only after being stored outside for six months or so, sheltered by nothing but visquene or a tarpaulin. Thus, one of the essential elements in a redhibition action is lacking, that is, a vice or defect present at the time of the sale. L.S.A.C.C. Art. 2530; Rey v. Cuccia, 298 So.2d 840 (La.1974).
Plaintiff further complains, however, that an action of redhibition lies under Civil Code Article 2529. The Article provides that a declaration made by the seller that the object sold has some quality, which it is found not to have, gives rise to an action in redhibition, if this quality was the principal motive for making the purchase. The action lies even though such quality does not constitute a vice or defect. Fusilier v. Ardoin, 266 So.2d 531 (La.App. 3rd Cir. 1972).
In this regard plaintiff contends that the principal quality which he sought in the building was simplicity and ease with which it could be constructed. He bases this argument on the manufacturer's impartation (in a brochure) that the building could be "assembled on the farm with hand tools" and the fact that the retailer told plaintiff the building could be easily erected. We however find no real evidence in the record to reflect that such quality was in fact not present. The fact that plaintiff received incorrect rafters and plans does not mean that the building did not have the quality of being "easily erectable".
It appears that what plaintiff is actually complaining of in this suit is that time was *661 "of the essence" in the erection of the building; that such intention was conveyed to the retailer, and that through delays caused by the incorrect rafters, plans, etc., he was unable to immediately construct this steel building, with the materials rusting as a result.
If time was of the essence, as alleged, to the plaintiff in constructing the building, the fact, however, remains' that the plaintiff chose to erect the building himself rather than having the defendant retailer do it. Thus the defendants had no direct part in constructing the steel building or in the time in which it was to be erected. Although delivery of the incorrect materials and plans did in fact cause a delay to the plaintiff, i.e. at the most, one month, the record does not show that plaintiff conveyed to the defendants notice that the material had to be delivered by a certain date or that such delivery date was understood. Neither was such a condition placed in the sale contract.
As to the cause of the rusting of the materials or placing of fault for such condition arising, plaintiff contends that the manner of storage, i. e. visquene, was suggested by the defendant retailer. Although the record bears this out, the evidence also reflects that the defendantDarryl Feucht informed plaintiff essentially that the materials could be stored in this manner if plaintiff planned to erect the building immediately, and, if not, implied they should have been stored in a nearby barn. Plaintiff himself admitted in testimony that anyone knew the galvanized sheeting would incur white rust if left outside for any period and that everyone knew to put such material in a dry place. He further indicated that he had not intended to leave the materials outside six to eight months and never inquired from the defendant retailer about the storage of the materials for such a time period.
The last issue raised is the question of damages.
Louisiana Civil Code Article 2543 provides that a buyer who brings a suit in redhibition, yet fails to prove that the defect was of such severity to warrant a recision of the sale, may nevertheless be granted, in the discretion of the court, a reduction in the price. Tauzin v. Sam Broussard Plymouth, Inc., 283 So.2d 266 (La.App. 3rd Cir. 1973); Papa v. Louisiana Metal Awning Company, 131 So.2d 114 (La.App. 2nd Cir. 1961).
This is apparently the award granted by the trial judge in this case, i. e. $450.00. Inasmuch as we have concluded that redhibition is not due in the present case, in addition to the fact that plaintiff offered no evidence in regard to diminution of the price, and the defendant did not appeal this award, we cannot say that the award of $450.00 was in error.
For the above and foregoing reasons the judgment of the trial court is affirmed at plaintiff-appellant's costs.
Affirmed.
NOTES
[1] This demand was apparently dropped prior to or at the trial.